IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| CHINICO DAVENPORT,<br><br>                                       Plaintiff,<br>      v.<br><br>RICHFOOD, et al.,<br><br>                                      Defendants. | Civil Action Number 3:07CV595 |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment or, in the alternative, Motion to Dismiss and Compel Arbitration (**Dkt. No. 8**), Motion to Compel Discovery (**Dkt. No. 11**), Motion for Expedited Hearing on Defendants' Motion to Compel Discovery (**Dkt. No. 13**), Motion to Withdraw Motion to Compel Discovery (**Dkt. No. 37**), and Defendant SuperValu's Motion for Leave to File Counterclaim (**Dkt. No. 31**). For the reasons expressed below, the Court shall DENY Defendants' Motion for Summary Judgment, or in the alternative, Motion to Dismiss and Compel Arbitration, and Defendant SuperValu's Motion for Leave to File Counterclaim. The Court shall GRANT Defendants' Motion to Withdraw Motion to Compel Discovery. Accordingly, the Court shall DISMISS Defendants' Motion to Compel Discovery and Motion to Expedite Hearing on Defendants' Motion to Compel Discovery.

**I.**

Plaintiff Chinico Davenport, an African-American truck driver, filed suit against his employer, SuperValu, Inc., and related companies, alleging discrimination, harassment, and retaliation on account of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e-2.  The Complaint describes a list of alleged incidents of discrimination and harassment occurring from September 2004 until March 2006, including but not limited to (1) a false accusation of shoplifting for which he was denied back pay, (2) denial of payment for property damage he incurred when he slid on ice, and (3) unfair and discriminatory distribution of work and disciplinary points for infractions he incurred.  Prior to filing suit, Davenport filed various grievances, including the incidents complained of in the instant Complaint, alleging violations of the collective bargaining agreement ("CBA").  Davenport, however, never submitted a discrimination grievance under Article V of the CBA.

Article V states, in relevant part, that:  "The Company and the Union agree that they will not discriminate, as defined by applicable law, against any employee because of race, creed, color, sex, age, religion, national origin, veteran status, or handicap." (Donchez Aff. Ex. 1 at 6.)  The CBA also outlines a four-step grievance procedure.  Step one requires the employee to submit grievances, in writing and within ten days of occurrence, to the appropriate supervisor.  If the grievance remains unresolved, then at step two the grievance is referred, in writing, to the Union business representative and the Transportation Manager or his appointee.  At step three, the Union or the Company may refer the grievance to a Joint Committee ("JC").  The JC consists of one member and one alternate selected by the Company, and one member and one alternate chosen by the Union. The CBA states that, "A decision reached by the Joint Committee shall be final and binding on all parties." (Donchez Aff. Ex. 1 at 6.)  If the grievance remains unresolved after step three, step four provides that "it may then be referred to impartial arbitration." (Donchez Aff. Ex. 1 at 6.)  Under the CBA, the decision of the arbitrator is also "final and binding on both parties." (Donchez Aff. Ex. 1 at 7.)

2

The record demonstrates that Davenport pursued the grievances which form the basis of his Complaint to the third step; however, Davenport never requested arbitration. Defendants seek summary judgment in their favor on the basis that, under the CBA, Davenport's claims are barred by prior final and binding decisions reached by the JC. In the alternative, Defendants assert that Davenport failed to arbitrate his claims prior to filing suit as required under the CBA and, therefore, they urge the Court to dismiss Davenport's case and compel arbitration. In opposition, Davenport contends that the CBA does not contain a "clear and unmistakable" notice of waiver of Davenport's right to a judicial forum for resolution of his statutory discrimination claims and, as a result, Defendants' motion should be denied.

**II.**

**A.**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. Ballinger v. N.C Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987). While viewing the facts in such a manner, courts look to the affidavits or other specific facts to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for disposing of "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327. "Where no genuine issue of material fact exists," it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal

quotation marks omitted).

**B.**

In Wright v. Universal Maritime Service Corp., 525 U.S. 70 (1998), the Supreme Court addressed the tension presented by two lines of case law on arbitration provisions in union-negotiated collective bargaining agreements. Id. at 76-77. The first line of cases, represented by Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), held that "an employee does not forfeit his right to a judicial forum for claimed discriminatory discharge in violation of Title VII of the Civil Rights Act of 1964 . . . if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective bargaining agreement." Universal Mar., 525 U.S. at 76 (internal quotation marks omitted). The second line of cases, represented by Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), maintained that "a claim brought under the Age Discrimination in Employment Act of 1967 (ADEA) . . . could be subject to compulsory arbitration pursuant to an arbitration provision in a securities registration form." Universal Mar., 525 U.S. at 76. To resolve the tension between the case law represented by Gardner-Denver and Gilmer, the Supreme Court concluded that a union does not waive an employee's right to a federal judicial forum for statutory antidiscrimination claims unless the waiver is "clear and unmistakable."[1] Id. at 80. The Court, however, did not reach the question of whether such a waiver would be enforceable. Id. at 82.

Since Universal Maritime, the Fourth Circuit has determined that a union-negotiated

---

[1] In reaching its conclusion, the Court first determined that because statutory antidiscrimination claims ultimately involve the interpretation of a federal statute and not a CBA, the presumption of arbitrability found in § 301 of the Labor Management Relations Act, 1947 (LMRA), 61 Stat. 156, 29 U.S.C. § 185 does not apply. Universal Mar., 525 U.S. at 78-79. Thus, in this instance, there is no presumption in favor of arbitration.

collective bargaining agreement that waives an employee's right to a federal judicial forum for statutory employment-discrimination claims is enforceable, but only where the waiver is "clear and unmistakable."  Aleman v. Chugach Support Serv., Inc., 485 F.3d 206, 216 (4th Cir. 2007).  The Fourth Circuit has explained that the "clear and unmistakable" requirement may be satisfied through two possible means: (1) the CBA contains an explicit arbitration clause referring to statutory claims, or (2) "where the arbitration clause is 'not so clear,' employees might yet be bound to arbitrate their federal claims if 'another provision, like a nondiscrimination clause, makes it unmistakably clear that the discrimination statutes at issue are part of the agreement.'"  Brown v. ABF Freight Sys., Inc., 183 F.3d 319, 321 (4th Cir. 1999) (quoting Carson v. Giant Food, Inc., 175 F.3d 325, 331 (4th Cir. 1999)).  Further, a joint labor-management committee is accorded the same status as arbitrators when the parties have designated the committee as its choice for binding settlement of grievances.  See Gen. Drivers, Warehousemen & Helpers v. Riss & Co., 372 U.S. 517, 519 (1963); Saunders v. Int'l Longshoremen's Ass'n, AFL-CIO, 265 F. Supp. 2d 624, 627-28 (E.D. Va. 2003).

Defendants contend that because the decisions of the JC are final and binding under the CBA, Davenport is barred from bringing this Complaint.  In the alternative, Defendants maintain that Davenport's failure to arbitrate his claims prior to filing suit as required under the CBA precludes him from bringing this action and arbitration should be compelled.  Davenport rejoins that the CBA fails to provide a "clear and unmistakable" waiver of his right to a judicial forum for resolution of his statutory discrimination claims.

The Court agrees with Davenport.  Both arguments asserted by the Defendants require that

the CBA clearly and unmistakably waived Davenport's right to a judicial forum.[2] Thus, the Court must determine whether the CBA (1) explicitly refers to Title VII or (2) in the alternative, if other provisions in the CBA make it unmistakably clear that Title VII is incorporated in the CBA. Article VII of the CBA outlines the grievance procedure and defines a grievance as a "written complaint, filed and advanced within the time limits specified below, claiming specific actual injury or prejudice to an employee resulting from the alleged noncompliance by the Company with an express provision of this Agreement." (Donchez Aff. Ex. 1 at 5.) Article V of the CBA governs discrimination and describes the parties' understanding as follows: "The Company and the Union agree that they will not discriminate, as defined <u>by applicable law</u>, against any employee because of race, creed, color, sex, age, religion, national origin, veteran status, or handicap." (Donchez Aff. Ex. 1 at 3) (emphasis added).

This provision certainly fails to satisfy the first approach as it does not explicitly incorporate Title VII. Compare <u>Safrit v. Cone Mills Corp.</u>, 248 F.3d 306, 307 (4th Cir. 2001) (finding that the CBA's discrimination provision, which stated that "the company and the union agree that they will not discriminate against any employee with regard to race, color, religion, age, sex, national origin or disability . . . [and] that they will abide by all the requirements of Title VII of the Civil Rights Act of 1964," contained a clear and unmistakable waiver); <u>Saunders v. Int'l Longshoremen's Assoc., AFL-CIO</u>, 265 F. Supp. 2d 624, 625, 627 (E.D. Va. 2003) (determining that the CBA contained an

---

[2]Even if the Court evaluated Defendants' arguments separately, the Court would find that the decisions of the JC are not binding on Davenport because he never submitted a discrimination claim to the JC. Although Davenport's present claims implicate grievances previously submitted to the JC, the nature of his present claims based on alleged discriminatory animus and his previous grievances pursued under provisions other than Article V of the CBA are wholly distinct.

explicit waiver where it provided "any and all disputes, claims, charges or complaints arising under [the Unlawful Discrimination and Harassment Section of the CBA], including those claiming violation of Title VII of the Civil Rights Act of 1964 . . . shall be brought before the Contract Board").

Moreover, under Fourth Circuit precedent, Article V's reference to "applicable law" is too vague to meet the second approach. See, e.g., Robinson v. Healthtex, Inc., 215 F.3d 1321, 2000 WL 691053, at *4 (4th Cir. 2000) (finding that the parties' agreement not to discriminate as prescribed by "provisions of Federal and State law" constituted an agreement "not to engage in acts violative of [federal law] as opposed to an agreement to incorporate, in toto, the antidiscrimination statues that prohibit those acts") (internal quotation marks omitted); Brown,183 F.3d at 322-23 (concluding that a CBA which prohibited discrimination based on an "individual's race, color, religion, sex, age, or national origin" and where the employer and union agreed not to "engage in any other discriminatory acts prohibited by law" did not amount to a clear and unmistakable waiver of the employee's statutory right to a federal forum); Carson v. Giant Food, Inc. 175 F.3d 325, 332 (4th Cir. 1999) (determining that a CBA clause which provided that "the Employer and the Union in the performance of this Agreement agree not to discriminate against any employee or applicant for employment because of race, color, religious creed, origin, age or sex" failed to satisfy the demand of particular clarity under either approach).

In this instance, the Court finds Brown particularly instructive. In Brown, the Fourth Circuit reasoned there is a legally dispositive difference between an agreement not to commit discriminatory acts that are "prohibited by law" and "an agreement to incorporate, in toto, the antidiscrimination statutes that prohibit those acts." 183 F.3d at 322. Thus, even though the language of the agreement

paralleled, or even parroted, the language of the federal anti-discrimination statutes and prohibited some of the same conduct, the CBA failed to satisfy the clear and unmistakable requirement established in Universal Maritime. Id. The anti-discrimination provision of the CBA at issue here suffers from the same deficiencies. "[A]pplicable law" is just as vague as "prohibited by law," and, as such, it is insufficient to constitute an agreement to incorporate federal or state employment antidiscrimination statutes. Compare Singletary v. Enersys, Inc., 57 F. App'x 161, 164 (4th Cir. 2003) (holding that the following CBA provision was a clear and unmistakable waiver of the union employee's right to a federal judicial forum: "any and all claims . . . under any federal or state employment law").

Because the anti-discrimination provision in the CBA only refers to "applicable law" and fails to expressly reference or incorporate Title VII and no other provision in the CBA refers to federal employment law, the Court concludes that the CBA failed to clearly and unmistakably waive Davenport's right to a judicial forum.

**III.**

Next, Defendant SuperValu, Inc. seeks leave to add a counterclaim for restitution in the amount of $16,870.44 for reimbursement of medical expenses it paid on Davenport's behalf. SuperValu alleges that, as the result of injuries Davenport received from a car accident, Davenport incurred $34,711.12 in medical expenses of which SuperValu, as the sponsor and administrator of Davenport's group welfare benefit plan that provided group health insurance benefits, paid $16,870.44. SuperValu asserts that Davenport has recently settled a med pay claim against his insurer Metropolitan Life Insurance Company. As such, SuperValu maintains that it has a right to reimbursement under the terms of the benefit plan. Because Davenport has allegedly refused to

reimburse SuperValu, SuperValu now requests leave to add the counterclaim pursuant to Federal Rule of Civil Procedure 15(a).

Federal Rule of Civil Procedure 13 generally governs counterclaims. Although a defendant typically files a counterclaim when it answers the complaint, Rule 13(e) permits a party to present, with permission of the court, a counterclaim by supplemental pleading that has matured or acquired after the original pleading. See Fed. R. Civ. P. 13(e). Since a counterclaim under Rule 13(e) is presented by supplemental pleading, it is read in conjunction with Rule 15(d). See Bergquist v. Aetna U.S. Healthcare, 289 F. Supp. 2d 400, 414 (S.D.N.Y. 2003). Rule 15(d) provides that the Court may allow a party to file supplemental pleadings setting forth "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d). Because SuperValu moves for a counterclaim based on facts that arose after the filing of its original Answer, the Court applies Rules 13(e) and 15(d).[3] See Franks v. Ross, 313 F.3d 184,198 n.15 (4th Cir. 2002) ("A supplemental pleading differs from an amended pleading because it relates to matters occurring subsequent to the filing of the initial complaint").

By definition, an after-acquired counterclaim does not exist at the time of serving of the original answer and counterclaim. Therefore, an after-acquired claim is not considered a compulsory counterclaim under Rule 13(a),[4] and failure to introduce it will not bar its assertion in

---

[3]The Court notes that the same standard applies to a motion to amend pursuant to Rule 15(a) and motion to supplement under Rule 15(d). Franks, 313 F.3d at 198 n.15. For either motion, leave shall be freely granted unless good reason exists, such as prejudice to the opposing party, to deny the motion. Id.

[4]Rule 13(a) requires a party to "state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R.

a later lawsuit. Stone v. Dep't of Aviation, 453 F.3d 1271, 1280-81 (10th Cir. 2006). Before allowing the addition of new counterclaims under Rule 13(e), the court must consider whether the counterclaim will cause confusion or inconvenience. See Texas Co. v. Borne Scrymser Co., 68 F.2d 104 (4th Cir. 1933) (holding that a counterclaim should not be permitted if it would result in a hindrance and delay to the plaintiff and make it more difficult to prosecute its claim); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Ill. Corp., 113 F.R.D. 527, 530 (N.D. Ill. 1986) (noting that a court should consider whether allowing the claim would be inconvenient or confusing because of the progress or nature of the case). Indeed, "[t]he reason that [the court's] permission is required is that the course of the litigation may be unduly disrupted if new claims are belatedly injected; in that case permission will be denied and the defendant can bring his claim as an independent lawsuit." Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 361 (7th Cir. 1990). Thus, although Rule 15(d) generally permits leave to be freely granted to supplement, where a counterclaim does not arise from the same transaction or occurrence as the plaintiff's claims, and is therefore not particularly relevant, a court may properly conclude that such a claim should be asserted in an independent proceeding. See Ins. Concepts, Inc. v. W. Life Ins. Co., 639 F.2d 1108, 1114 (5th Cir. 1981) (holding that a trial court has discretion to refuse to allow a supplemental counterclaim not particularly relevant to the plaintiff's claim).

In the present case, SuperValu's claim for reimbursement of medical expenses is completely unrelated to Davenport's original claims alleging discrimination, harassment, and retaliation. As such, the Court finds that the addition of SuperValu's claim for reimbursement of medical expenses at this stage would unduly burden and confuse these proceedings. Therefore, SuperValu's Motion

---

Civ. P. 13(a) (emphasis added).

for Leave to File Counterclaim shall be denied.

## IV.

For the aforementioned reasons, the Court shall DENY Defendants' Motion for Summary Judgment, or in the alternative, Motion to Dismiss and Defendant SuperValu's Motion for Leave to File Counterclaim.

An appropriate Order shall be issued.

> /s/
> James R. Spencer
> Chief United States District Judge

Entered this   13th    day of June 2008